**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **ALI SEDAGHATPOUR,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **Case No. 1:22-cv-355** |
| | ) | |
| **LEMONADE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

At issue in this diversity insurance coverage dispute is whether the insurance policy issued to Plaintiff Ali Sedaghatpour by Defendant Lemonade Insurance Company covers theft of cryptocurrency. Defendant's Motion to Dismiss the Amended Complaint has been fully briefed and argued orally, and thus the Motion is ripe for disposition. For the reasons that follow, the Motion to Dismiss the Amended Complaint must be granted.

**I.**

The facts that follow are derived from the allegations of fact contained in the Amended Complaint which are taken as true solely for purpose of resolving the Motion to Dismiss. *See Fairfax v. CBS Corp.*, 2 F.4th 286, 291-92 (4th Cir. 2021). Of course, the Amended Complaint's allegations of law are not accepted as true for purposes of resolving the Motion. *Id.*

Plaintiff alleges that he owned substantial amounts of various cryptocurrencies. Like many owners of cryptocurrency, plaintiff elected to store his cryptocurrency on a hot wallet, a virtual storage option wherein cryptocurrency is stored on a third party's servers. In this case, plaintiff stored his cryptocurrency on a hot wallet known as APYHarvest. Although APYHarvest is physically located in Ireland and England, APYHarvest's hot wallet, like other hot wallets, was always accessible to plaintiff via the internet. Plaintiff alleges that, on December 31, 2021, he

discovered that all of his cryptocurrency stored in the APYHarvest hot wallet—worth $170,424.67 at that time—had been stolen.

On January 3, 2022, plaintiff made a claim under his homeowner's insurance policy with policy number "LP3188F4105" ("the Policy") for $160,000.00, the Policy's limit. Defendant denied plaintiff's claim. As an exhibit to the Amended Complaint reflects, defendant's claims' representative denied plaintiff's claim on the ground that the Policy protects plaintiff's "stuff," or property, only when that property is "damaged directly" by one of the "specific losses" contemplated in the policy. Am. Compl., Ex. 2 at 2. The claims' specialist further reasoned that, even if plaintiff's loss were covered by the Policy, the Policy's limitation of $500.00 for loss "resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit" limited coverage for plaintiff's loss of cryptocurrency to $500.00. *Id.* Accordingly, defendant paid plaintiff $500.00 to cover the loss of plaintiff's cryptocurrency.

Not satisfied with this result, plaintiff first invoked and then ultimately exhausted defendant's internal appeals procedures, all without success as defendant consistently denied that the Policy included coverage for loss of cryptocurrency. Plaintiff thereafter filed a Complaint in the Circuit Court of Fairfax County, seeking $159,500.00 in damages, the Policy's $160,000.00 limitation less the $500.00 that plaintiff had already received from defendant. Defendant then removed the Complaint to federal court and filed a Motion to Dismiss, arguing that the Complaint failed to state a valid claim for breach of contract as the Policy did not include coverage for theft or loss of cryptocurrency.

On May 16, 2022, an Order issued dismissing the Complaint without prejudice for failing to identify (i) the types of cryptocurrencies allegedly stolen from plaintiff, (ii) when and how the cryptocurrencies were stolen, and (iii) the place from which the cryptocurrencies were stolen. *See*

*Sedaghatpour v. Lemonade Ins. Co.*, No. 22-CV-355, Dkt. 10 (E.D. Va. May 16, 2022). The dismissal Order afforded plaintiff leave to file an Amended Complaint, and plaintiff timely did so on June 15, 2022. It is this Amended Complaint that is the subject of defendant's current Motion to Dismiss.

The Amended Complaint attempts to address the issues identified in the May 16, 2022 Order. First, the Amended Complaint identifies the eleven specific cryptocurrencies that were stolen.[1] Second, the Amended Complaint alleges that, between October 10, 2021 and December 30, 2021, plaintiff transferred those eleven cryptocurrencies from his laptop or smartphone while sitting at home to the APYHarvest hot wallet based in London, England and Dublin, Ireland. Third, the Amended Complaint alleges that, on December 31, 2021, plaintiff discovered that his cryptocurrency in the APYHarvest wallet had been stolen. The Amended Complaint further alleges that APYHarvest was itself the thief that had stolen plaintiff's cryptocurrency, first by moving plaintiff's cryptocurrency to a company in the Cayman Islands—Binance.com—and thereafter by selling the cryptocurrency to an unidentified third party. According to the Amended Complaint, Binance.com then informed plaintiff that his cryptocurrency had been sold on Binance.com. The loss, plaintiff alleges, totaled over $170,000.00.

On July 6, 2022, defendant filed the instant Motion to Dismiss the Amended Complaint, arguing (i) that the Policy does not cover loss of cryptocurrency or, in the alternative, (ii) that the Policy limits coverage for loss of cryptocurrency to $500.00, an amount that defendant has already paid plaintiff. In opposition to the Motion to Dismiss, plaintiff argues (i) that the Policy insures against loss of plaintiff's cryptocurrency, (ii) that no provision in the insurance policy limits

[1] The eleven stolen cryptocurrencies were (1) Bitcoin, (2) Ethereum, (3) USD Coin, (4) TerraUSD, (5) Bitcoin Cash, (6) Stellar, (7) Ethereum Classic, (8) Gemini USD, (9) OMG Network, (10) Zcash, and (11) Verge.

coverage for such loss of cryptocurrency to $500.00, and (iii) that defendant is barred from raising arguments in its Motion to Dismiss that it did not raise when it initially rejected plaintiff's claim.

**II.**

To survive a motion to dismiss, the Amended Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Thus, in this instance, the Amended Complaint must contain sufficient factual matter to state a plausible claim for breach of the insurance policy. Moreover, this case turns on the interpretation of an insurance policy, and Courts applying Virginia law[2] "interpret insurance policies like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *Seals v. Erie Ins. Exch.*, 277 Va. 558, 562 (2009). When the language in the policy is "clear and unambiguous," the language is afforded "its plain and ordinary meaning" and the policy is enforced "as written." *Selective Way Ins. Co. v. Crawl Space Door Sys., Inc.*, 162 F. Supp. 3d 547, 551 (E.D. Va. 2016) (citing *Blue Cross & Blue Shield v. Keller*, 248 Va. 618, 626 (1994)).

Analysis of the Motion to Dismiss properly begins with a review of the Policy provisions to determine the scope of the coverage provided to plaintiff. Once the scope of the coverage is determined, the next step is to determine whether plaintiff's claim of loss fits within that coverage. Here, the Policy provides that it insures against "direct physical loss" to plaintiff's personal

---

[2] Although the insurance policy does not contain a choice-of-law provision, Virginia law nonetheless plainly applies here. Federal courts "sitting in diversity borrow[] the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022). In Virginia, questions regarding the interpretation of insurance contracts are resolved by applying the law of the state where the contract was made. *Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 394 (1996). And in Virginia, homeowner's insurance contracts insuring properties in Virginia are "deemed to have been made in [Virginia] and shall be construed in accordance with" Virginia law. Va. Code § 38.2-313. As the Policy concerns a Virginia property, it follows that interpretation of the Policy is governed by Virginia law.

property[3] "caused by any of the following perils," one of which is "theft." Am. Compl., Ex. 1 at 15. The Policy also makes clear that it covers "personal property owned or used by [plaintiff] while it is anywhere in the world." *Id.* at 9.

Given this scope of coverage, the principal issue presented by the Motion to Dismiss is whether theft of cryptocurrency is a "direct physical loss" within the Policy's coverage. Resolution of this issue requires an understanding of cryptocurrency. Although plaintiff does not define cryptocurrency, various dictionaries and governmental agencies define cryptocurrency as existing wholly virtually or digitally. For example, Merriam-Webster's dictionary defines cryptocurrency as "any form of currency that only exists digitally… ." *Cryptocurrency*, Merriam-Webster.com, www.merriam-webster.com/dictionary/cryptocurrency (last visited Feb. 6, 2023). And the Internal Revenue Service defines cryptocurrency as "a type of virtual currency that uses cryptography to secure transactions that are digitally recorded on a distributed ledger, such as a blockchain." I.R.S. Rev. Rul. 2019-24. Thus, it is clear that cryptocurrency, by its nature, exists only virtually or digitally and has no physical or tangible existence. It follows, therefore, that the policy does not cover loss or theft of cryptocurrency because the loss or theft does not constitute a "direct *physical* loss" to plaintiff's property.

Given the novelty of cryptocurrency, it is not surprising that the parties have cited no Virginia case considering whether theft of cryptocurrency constitutes a "direct physical loss" under a homeowner's insurance policy like the policy defendant issued to plaintiff. Yet there is authority from a district court in California considering precisely this question and concluding that the theft

[3] Plaintiff argues, and defendant does not contest, that cryptocurrency is "property." Thus, it is unnecessary to decide whether cryptocurrency is property, as that issue has not been raised here. The dispositive issue is that the loss or theft of cryptocurrency—assuming that cryptocurrency is property—does not involve a "direct physical loss" as required by the Policy.

of cryptocurrency does not constitute a "direct physical loss," as required by the policy there and the Policy here. Specifically, in *Burt v. Travelers Commercial Insurance Company*, 2022 WL 3445941 (N.D. Cal. 2022), the Northern District of California concluded that loss of cryptocurrency was not a "direct physical loss" because cryptocurrency has a wholly virtual existence, but has no physical material existence. *Burt*, 2022 WL 3445941 at *3. Thus, although *Burt* is not controlling in this case, the reasoning of that Court firmly supports the conclusion reached here: the Policy here, like the policy at issue in *Burt*, does not cover loss of cryptocurrency because cryptocurrency exists wholly virtually and has no tangible existence, and thus, there can be no "direct physical loss" as required by the Policy.

Also worth noting is that the result reached here is consistent with Fourth Circuit authority applying Virginia law in the computer context, albeit not specifically in the cryptocurrency context. In *NMS Servs. Inc. v. Hartford*, 62 F. App'x 511 (4th Cir. 2003), a hacker gained access to the plaintiff's computer network and deleted various computer files necessary for the operation of the plaintiff's computer network, thereby damaging the plaintiff's computer systems. *Id.* at 512. To be sure, the Fourth Circuit, in a brief opinion, concluded the plaintiff there suffered a "direct physical loss" because the hacker's deletion of files on the plaintiff's computers caused damage to the plaintiff's property. *Id.* at 514. Notably, the Fourth Circuit's conclusion that coverage existed depended upon two important facts not present here. First, in *Hartford*, the plaintiff's computer systems were damaged; had the deletion of files not resulted in damage to the computer system, the plaintiff in *Hartford* would not have suffered a physical loss. *See id.* Second, the damage in *Hartford* occurred to the *plaintiff's* computer systems; the deletion of plaintiff's files stored on a non-insured's computer systems would not have been a "direct physical loss" to *plaintiff's* property. *See id.*

Those two critical and necessary facts are missing here. First, unlike in *Hartford*, where the deletion of files resulted in computer damage, plaintiff here does not allege that theft of his cryptocurrency resulted in any damage to any computer system or any tangible property. This difference between the instant case and *Hartford* is important because it was the damage to the computer system in *Hartford*—damage not present here—that allowed the court in *Hartford* to conclude that there had been a "direct physical loss" to property as required by the policy at issue in *Hartford*. Second, according to the Amended Complaint, plaintiff's cryptocurrency was stored not on plaintiff's own computer but rather on APYHarvest's computer system. Thus, even if there were some "direct physical loss," that loss occurred to APYHarvest's servers, not to the plaintiff's computer or server. This fact is different from *Hartford* where the deletion of files occurred on the plaintiff's computer. Accordingly, the Amended Complaint here alleges no facts demonstrating that plaintiff suffered a "direct physical loss" when his wholly-virtual cryptocurrency was stolen, a requisite condition of recovering under the insurance policy. Thus, the Fourth Circuit's decision in *Hartford*, although not directly applicable to the cryptocurrency context, persuasively suggests that the theft of plaintiff's cryptocurrency here did not involve a "direct physical loss" as required by the Policy.

Seeking to avoid the conclusion that loss of cryptocurrency is not a "direct physical loss," plaintiff raises two arguments. First, plaintiff contends that the term "physical" is ambiguous and thus should be construed against defendant because defendant drafted the insurance policy. Second, plaintiff argues that defendant, in recent and subsequent insurance policies, specifically provides that loss of electronic currency, such as cryptocurrency, is not covered; the absence of this language in his policy, plaintiff argues, demonstrates that loss of cryptocurrency *is* covered in plaintiff's policy. Neither of plaintiff's two arguments is persuasive.

As to plaintiff's first argument, although the Fourth Circuit has made clear that ambiguities in an insurance policy must be construed against the insurer, *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005), no genuine ambiguity is present in the Policy's use of the term "direct physical loss." In this regard, the Supreme Court of Virginia has made clear that contract language is ambiguous only when "it may be understood in more than one way or when it refers to two or more things at the same time." *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631 (2002). Here, there is only one way to understand how the "direct physical loss" language applies to cryptocurrency; because, as discussed *supra*, plaintiff's cryptocurrency does not exist tangibly, but rather exists only virtually, there is no ambiguity that plaintiff suffered no "direct physical loss." And the fact that plaintiff disagrees with the plain meaning of "direct physical loss," as interpreted by courts applying Virginia law, does not create a genuine ambiguity.

Second, plaintiff asserts that defendant, in recent and subsequent insurance policies issued to other people, has specifically provided that loss of "electronic currency," such as cryptocurrency, is not covered. The negative inference, plaintiff argues, is that where, as here, an insurance policy does not contain an explicit "electronic currency" exclusion, electronic currency *is* covered by the Policy. But as the Supreme Court of Virginia has made clear, the task at hand is to interpret the insurance policy based upon the words "used in the document." *Seals*, 277 Va. at 562. And as the D.C. Circuit Court of Appeals has recently noted, "[a] policy is not ambiguous" merely because the insurer later "amends its provisions." *Katopothis v. Windsor-Mount Joy Mut. Ins. Co.*, 905 F.3d 661, 668 (D.C. Cir. 2018). To hold otherwise would discourage insurance companies from clarifying their policies, which would in turn be most harmful to their customers. Plaintiff's second argument therefore is unpersuasive. Here, the words used in the Policy are clear;

theft is covered only if a theft includes a "direct physical loss," which did not occur here because cryptocurrency exists wholly virtually. And the fact that defendant clarified in subsequent policies that "electronic currency" is not covered is just that: a clarification.

In sum, because the loss of cryptocurrency does not involve a "direct physical loss" as required for coverage under the Policy, the Policy provides no coverage for the theft of plaintiff's cryptocurrency. This is because a physical impact to covered property is required for a "direct physical loss" to have occurred. And no such physical impact to cryptocurrency is possible because it exists wholly virtually.[4]

Plaintiff raises one further argument in his attempt to avoid dismissal of the Amended Complaint. Specifically, plaintiff argues that because defendant relied only on the electronic fund transfer $500.00 limitation language in denying plaintiff's initial claim, defendant cannot now claim that the Policy provides no coverage on the basis of the "direct physical loss" language because of the "mend the hold" doctrine, which plaintiff argues prevents a party *at litigation* from offering different reasons for refusing to perform a contract than the party offered *before litigation*. *See Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362-63 (7th Cir. 1990) (noting that

---

[4] Given the conclusion that theft of cryptocurrency is not covered by the Policy, it is unnecessary to reach or decide defendant's next argument, namely that, even if theft of cryptocurrency were a "direct physical loss," then the Policy limits coverage for that loss. Specifically, the Policy language states that defendant will pay only "up to $500 for . . . [l]oss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in [plaintiff's] name." Am. Compl., Ex. 1 at 12. Defendant argues that, even if cryptocurrency is covered by the Policy, cryptocurrency operates like an electronic fund transfer card, and thus, coverage for theft of cryptocurrency is limited to $500.00. It is worth noting that the loss limitation language is not, by its terms, applicable because plaintiff has not suffered from theft due to an electronic fund transfer card. But, to analogize cryptocurrency to the physical realm, plaintiff essentially suffered theft through the unauthorized use of an access device by APYHarvest. As noted, because the Policy does not provide any coverage here, it is unnecessary to reach and decide whether the electronic fund transfer limitation applies.

the reach of the "mend the hold" doctrine is uncertain but, where it applies, it prevents a party to a contract from relying on a position at litigation when the party failed to rely on that position before litigation). Plaintiff argues, therefore, that defendant is barred from prevailing on its Motion to Dismiss by arguing that loss of cryptocurrency is not a "direct physical loss" because defendant did not make that argument at the claim's denial stage. Plaintiff's argument with respect to the "mend the hold" doctrine fails.

To begin with, plaintiff proffers no authority to suggest that Virginia has adopted the "mend the hold" doctrine. Indeed, a thorough search revealed no Supreme Court of Virginia cases adopting that doctrine, and at oral argument, plaintiff's counsel acknowledged that he had no authority to support the proposition that Virginia has adopted that doctrine. Although plaintiff's counsel cited to the Virginia Fair Claims Handling Act, that Act provides only that an insurer must provide promptly "a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Va. Code § 38.2-510(A)(14). But plaintiff does not assert a cause of action under the Virginia Fair Claims Handling Act, nor could plaintiff do so, because that Act provides that "[n]o violation of this section shall of itself be deemed to create any cause of action in favor of any person" other than the government. Va. Code § 38.2-510(B). Thus, because Virginia has not adopted the "mend the hold" doctrine either through common law or statute, plaintiff's argument based on the "mend the hold" doctrine fails and does not bar defendant from prevailing on the Motion to Dismiss.

Second, even assuming *arguendo* that Virginia would adopt the "mend the hold" doctrine, it is clear that defendant in this case did not run afoul of that doctrine. When defendant's claim specialist first denied plaintiff's claim here, the claim specialist explained that the Policy protects loss to plaintiff's "stuff" only "when it's damaged directly by one of the 17 specific losses" listed

in the Policy. Am. Compl., Ex. 2 at 2. That reasoning forms the basis for the arguments made by defendant in the instant Motion: defendant here argued that loss of cryptocurrency is not one of the "17 specific losses" listed in the Policy because there was no "direct physical loss" here. To be sure, defendant here in argument on the Motion to Dismiss *expands* on the reasoning offered by defendant's claim's specialist. But nothing in the "mend the hold" doctrine, even were it to apply, forbids attorneys at litigation from *expanding* upon reasons given by a claim's specialist. Thus, the "mend the hold" doctrine, even were it applicable in Virginia, would not bar defendant from prevailing on its Motion to Dismiss.

In summary, plaintiff's arguments with respect to the "mend the hold" doctrine are unavailing because (1) the "mend the hold" doctrine has not been adopted in Virginia and, in any event, (2) defendant here did not run afoul of the "mend the hold" doctrine; defendant's claim specialist's reasoning is the same reasoning that formed the basis of defendant's arguments on the Motion to Dismiss. Thus, the "mend the hold" doctrine does not bar defendant from prevailing on its Motion to Dismiss.

III.

In sum, plaintiff's loss of cryptocurrency was not a "direct physical loss" as required for coverage under the Policy. No argument proffered by plaintiff is persuasive to the contrary. It is therefore appropriate to grant defendant's Motion to Dismiss the Amended Complaint.

An appropriate Order will issue.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 6, 2023

/s/
T. S. Ellis, III
United States District Judge