IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALI SEDAGHATPOUR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:22-cv-355 (RDA-JFA) ) |
| LEMONADE INSURANCE COMPANY, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Ali Sedaghatpour's ("Plaintiff") Motion for Leave to File a Second Amended Complaint. Dkt. 36. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion together with Defendant Lemonade Insurance Company's ("Defendant") Opposition (Dkt. 37) and Plaintiff's Reply (Dkt. 38), this Court DENIES the Motion for Leave to File a Second Amended Complaint for the following reasons.

### I. BACKGROUND

On March 2, 2022, Plaintiff initiated a breach of contract suit against Defendant in the Circuit Court of Fairfax County, Virginia, seeking $159,500 in damages after receiving a payment of only $500 from his homeowner's insurance policy (the "Policy"). Dkt. 1-1 at 2-4. The Policy was issued by Defendant and provides for up to $160,000 in coverage for the "direct physical loss" of covered property. Dkt. 1-1 at 6. The Policy also provides for up to $500 in coverage for losses "resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an insured's name" (the "EFT

provision"). Dkt. 1-1 at 16. In the initial complaint, Plaintiff asserted that the Policy covered the theft of his cryptocurrency, which was valued as more than the Policy's coverage. Dkt. 1 ¶ 7.

Defendant subsequently removed the case to this District on March 30, 2022, Dkt. 1, and moved to dismiss the complaint on April 6, 2022, Dkt. 4. On May 16, 2022, former U.S. District Judge T.S. Ellis, III granted Defendant's motion to dismiss because Plaintiff had failed to identify (i) the types of currencies allegedly stolen from Plaintiff, (ii) when and how the cryptocurrencies were stolen, and (iii) the place from which the cryptocurrencies were stolen. Dkt. 10. Plaintiff then filed his first amended complaint ("FAC") on June 15, 2022, identifying: (i) the eleven types of cryptocurrencies that were valued at $170,424.67 at the time they were allegedly stolen; (ii) how he transferred the cryptocurrencies from his personal devices to a APYHarvest hot wallet located in London, England and Dublin, Ireland throughout the period between October 10, 2021 and December 30, 2021; and (iii) the location of the third-party company who allegedly sold the cryptocurrency stored with them, Binance.com, in the Cayman Islands. Dkt. 11; Dkt. 25 at 3.

Defendant then filed a motion to dismiss Plaintiff's FAC on July 6, 2022, "arguing that (i) the Policy does not cover loss of cryptocurrency or, in the alternative, (ii) that the policy limits coverage for loss of cryptocurrency to $500.00." Dkt. 12; Dkt. 25 at 3. Following briefing and a hearing on the motion to dismiss, Judge Ellis granted Defendant's motion to dismiss on February 6, 2023. Dkt. 25 at 11. Judge Ellis held that "because the loss of cryptocurrency does not involve a 'direct physical loss' as required for coverage under the Policy, the Policy provides no coverage for theft of Plaintiff's cryptocurrency." *Id.* at 9. Judge Ellis further explained that cryptocurrency, existing "only virtually or digitally," differs from the Fourth Circuit's understanding of physical

damage to a plaintiff's property. *Id.* at 6.[1] Plaintiff subsequently appealed, and the Fourth Circuit affirmed the decision in an unpublished opinion on October 24, 2024. Dkts. 28, 31. The Fourth Circuit opined that Plaintiff had no breach of contract claim against Defendant because Defendant satisfied the Policy requirement to deliver $500 in relief pursuant to the EFT provision. Dkt. 31. The Fourth Circuit also explained that further relief is not appropriate because "under Virginia law, the term 'direct physical loss requires present or impending material destruction or material harm,'" Dkt. 31 at 2 (quoting *Elegant Massage, LLC v. State Farm Mut. Auto Ins. Co.*, 95 F.4th 181, 190 (4th Cir. 2024)), and "the *digital* theft of *digital* currency does not amount to a 'direct physical loss,'" Dkt. 31 at 2 (emphasis added).

Plaintiff now moves to file a second amended complaint ("SAC"), in which he attempts to reframe his allegations to focus on the loss of the "physical" cryptocurrency wallet holding the digital currency. Dkt. 36. Specifically, the SAC alleges that the theft of the "physical wallet which provided access to Plaintiff's cryptocurrency," and that the amount he now seeks to recover is the value of the cryptocurrency – not the wallet. *Id.* at 11-12 (indicating that Plaintiff is owed $160,000 which reflects the value of the cryptocurrency at the time of the theft).[2] Following Plaintiff's filing

---

[1] The February 6, 2023 Opinion specifically referred to *NMS Servs. Inc. v. Hartford*, 62 F. App'x 511, 514 (4th Cir. 2003). Dkt. 25 at 6. There, the Fourt Circuit held that a plaintiff whose insured computer systems were damaged during the hacking of their computer network experienced "direct physical loss" because the hacker's deletion of files caused damage to the plaintiff's physical property—the computer itself. *NMS Servs. Inc.*, 62 F. App'x at 514. The Fourth Circuit found direct physical loss existed because there was actual damage to the computer itself, whereas here, Plaintiff's "wholly virtual cryptocurrency" was not and could not be damaged because it is not tangible. Dkt. 25 at 6-7.

[2] As courts recognize there are "primarily three types of crypto wallets: hosted wallets, noncustodial wallets, and hardware wallets." *In re Coinbase Global, Inc.*, 2025 WL 843852, at *1 (N.D. Ill. Mar. 18, 2025). "A hosted wallet is managed by a third party, like Coinbase, that stores the crypto holder's private keys . . ." *Id.* Here, Plaintiff appears to allege that the stolen wallet was a hosted wallet because he alleges that he "transferred the . . . cryptocurrency to a wallet on APYHarvest.com." Dkt. 36 at 6.

of the Motion on December 16, 2024, this District Judge was assigned to the case. Defendant filed an opposition on December 30, 2024,[3] and Plaintiff replied on January 8, 2025. Dkts. 37, 38.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) allows a party to "amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. 15(a)(2). However, a court should deny leave to amend a pleading "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Food Co.*, 785 F.2d 503, 509 (4th Cir. 1986). "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transportation*, 914 F.3d 213, 228 (4th Cir. 2019). "[D]istrict courts are free to deny leave to amend as futile if the [pleading] fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). Moreover, "the reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]' " and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim to relief that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570). A claim is facially plausible "when the

---

[3] Plaintiff argues that Defendant improperly served its opposition via email because Plaintiff did not consent to electronic service and Defendant denied email service upon themselves from Plaintiff, as well. Dkt. 38 at 4. Even if Plaintiff is correct that Defendant improperly served its opposition, Plaintiff's proposed amended complaint is still insufficient to state a claim and will be dismissed as futile.

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)).

III. ANALYSIS

In his Motion for Leave to File a Second Amended Complaint, Plaintiff asks the Court to grant him leave to amend the complaint for a second time to focus the breach of contract claim on the assertion of the theft of his "physical" cryptocurrency wallet. Dkt. 36 ¶ 4. Plaintiff's proposed SAC asserts that the wallet holding the cryptocurrency was "physically" stolen by APYHarvest—the website that hosted the wallet—when it "extinguish[ed]" his access to the wallet. Dkt. 36 ¶¶ 6, 9. He asserts that this claim is distinct from his claims before the Fourth Circuit, because no court has previously ruled on the theft of the wallet. *Id.* ¶ 3. Although Defendant correctly argues that Plaintiff's motion should be denied and that the Motion is futile, Defendant incorrectly frames the analysis as a matter of *res judicata*.[4] The more appropriate analysis rather is whether amendment

---

[4] The doctrine of *res judicata* precludes a plaintiff from bringing a new claim that arises out of the same transaction or occurrence as a previously decided claim and could have been asserted with the original claim. *See Cromwell v. Sac*, 94 U.S. 351, 365 (1876). Essentially, *res judicata* precludes the loser of a proceeding from filing a second proceeding in search of a different result. Here, there is no second proceeding – Plaintiff merely seeks to amend the claims that he previously filed. Thus, *res judicata* is not the proper framing of the issues here.

5

would violate the law of the case doctrine, the mandate rule, or, simply, would be futile under Rule 15. Plaintiff's Motion fails under each of these analyses and will be denied.

"Under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Zaklit v. Global Linguist Solutions, LLC*, 53 F.Supp.3d 835, 837 (E.D. Va. 2014). The challenging party has a high burden to illustrate that the prior decision was wrong, and not just "clearly erroneous," but rather "it must be 'dead wrong.'" *Id.* The exceptions to the law of the case doctrine are as follows: "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *Id.* at 846. The mandate rule is a specific application of the law of the case doctrine and "prohibits a lower court from reconsidering on remand issues laid to rest by a mandate of the higher court." *United States v. Alston*, 722 F.3d 603, 606 (4th Cir. 2013).

Here, Plaintiff argues that amendment should be allowed because the SAC purports to present a new claim. Dkt. 36 ¶ 5. As a matter of construction, the proposed amended claim does not meaningfully differ from the claim dismissed in the FAC because Plaintiff still has not suffered a direct physical loss and still seeks to recover the value of the stolen cryptocurrency itself. Dkt. 36 ¶ 24 (alleging that the "cryptocurrency [was] valued at $170,424.67" and that he has "damaged in the amount of $160,000" – the policy limit for theft). Because Plaintiff still seeks to recover the value of the cryptocurrency itself, this Court is bound by the previous decisions in this case from Judge Ellis and the Fourth Circuit holding that cryptocurrency cannot constitute a "direct physical loss" under the Policy and that Defendant has satisfied its obligation to Plaintiff by giving him $500 for his losses under the ETF provision of the Policy. Dkts. 25; 31. Accordingly, Plaintiff's

Motion will therefore be denied because the SAC does not raise a new claim and the law of the case, and the mandate rule precludes this Court from reaching a contrary result to what Judge Ellis and the Fourth Circuit have already held in this very case.

In any event, the amendment is futile because, as with the FAC, the loss alleged in the SAC is not a physical loss of tangible property. Though Plaintiff alleges that the wallet holding the cryptocurrency is a physical object that stores software, the hot wallet does not have physical properties and is intangible and web-based. Jake Frankenfield and Erika Rasure, Investopedia, Cryptocurrency Strategy and Education, "What is a Hot Wallet?" (January 8, 2022) *available at* https://www.investopedia.com/terms/h/hot-wallet.asp).[5] Plaintiff's allegations in the proposed SAC confirm that the wallet to which he refers is intangible and web-based, as he explicitly acknowledges that he transferred the cryptocurrency to "a wallet on APYHarvest.com." Dkt. 36 ¶ 6. The Policy requires "physical injury to, destruction of, or loss of use of tangible property" to be eligible for recovery of up to $160,000 for personal property damage. *Id.* at 11. Given that the wallet holding the digital cryptocurrency was also digital, Plaintiff's proposed SAC fails for the same reasons that the FAC failed. *See* Dkt. 31 (explaining that coverage was not available under the section of the Policy providing for up to $160,000 in coverage "[b]ecause the digital theft of digital currency does not amount to a 'direct physical loss'"). Thus, courts analyzing the loss of similar property have held that such property is intangible. *See Emoi Services, L.L.C. v. Owners Insurance Company*, WL 17905839, 2022-Ohio-4649 (Oh. 2022) (holding that software "is

---

[5] Other district courts have taken judicial notice of information provided regarding cryptocurrency on Investopedia. *See Padilla v. Cmty. Health Sys., Inc.*, 2022 WL 3452318, at *3, n.10 (M.D. Tenn. Aug. 17, 2022) ("The Court is able to take sua sponte judicial notice of the definitions of investment terms which are publicly available on the Investopedia website" (citing cases)); *Luma v. Dib Funding, Inc.*, 2022 WL 181156, at *15, n.14 (D. Md. Jan. 19, 2022) ("We take judicial notice definitions of 'cryptocurrency' provided by Investopedia[.]")

essentially nothing more than a set of instructions," and software losses resulting from a cyberattack was not physical loss as "information is wholly intangible"); *Rosenberg v. Homesite Ins. Agency, Inc.*, 683 F. Supp. 3d 926, 932 (D. Minn. 2023) (rejecting similar argument that "crypto tokens" constituted a physical loss because the tokens were a "purely digital asset"). Although a crypto wallet could conceivably be a physical asset, Plaintiff's allegations are to the contrary here where the wallet was alleged to have been hosted electronically. Dkt. 36 ¶ 6. Moreover, Plaintiff would not be permitted to recover the *contents* of the wallet, even if the wallet itself was a physical entity, because, as the Fourth Circuit has previously held, such contents are purely digital and intangible.

Plaintiff attempts to avoid this result by arguing that his allegations regarding the so-called "physicality" of the wallet must be taken as true at this stage. Dkt. 38 at 4. Plaintiff is mistaken. First, Plaintiff's allegations regarding the wallet being a "physical" item are conclusory and are contradicted by his own allegation that the wallet was "on APYHarvest.com," which is to say it was digitally hosted and thus only exists digitally. Dkt. 36 ¶ 6; *see Iqbal*, 556 U.S. 662 at 663 (quoting *Twombly*, 550 U.S. 554 at 555) (recognizing that "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements"). Second, in terms of the loss that Plaintiff alleges that he experienced, it was not the theft of a physical item but the website "extinguishing Plaintiff's access," again demonstrating that Plaintiff's allegations are not of a physical loss. Dkt. 36 ¶ 9. In short, Plaintiff has not alleged that the wallet has gone anywhere, he merely alleges that he cannot access it. Further demonstrating the fallacy of Plaintiff's argument is his own allegation that this was all done "via the Internet." *Id.* Thus, Plaintiff's claim is futile, and his Motion will

be denied on futility grounds as well.[6] And, in any event, Rule 15 and the interests of justice do not require further leave to amend where Plaintiff has previously amended his complaint twice and nonetheless failed to state a claim upon which relief could be granted.

## IV. CONCLUSION

In sum, Plaintiff's proposed Second Amended Complaint runs afoul of the mandate rule and the law of the case and is otherwise futile. Accordingly, it is hereby ORDERED that Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. 36) is DENIED.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
June 10, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[6] Plaintiff also claims that the "mend the hold doctrine" prevents an insurance company from attempting to change their reasoning for denying an insurance claim once litigation has begun. Dkt. 38 at 2. Plaintiff incorrectly relies on the "mend the hold doctrine" for three reasons: (1) as Judge Ellis recognized, Virginia has not adopted the "mend the hold doctrine" through common law or statute, and even if they did, Dkt. 25 at 10-11; (2) as Judge Ellis also held, Defendant nothing in the doctrine would forbid Defendant from expanding upon their initial reasoning in denying Plaintiff's claim for not specifying a direct physical loss, id.; and (3) Plaintiff does not allege that he made any claim for a loss of the wallet as opposed to the cryptocurrency.